## JOHN HICKS ET AL. v. WILLIAM S. TURCK AND TOWNSEND A. ELY.

*Specific performance—Fraud.*

Equity will not decree the performance of a contract into which a party has been led by misrepresentation; and parties asking for such relief must exhibit a contract free from any charge or suspicion of unfairness or fraud.

Appeal from Clinton. (Daboll, J.) Argued April 17, 1891. Decided June 5, 1891.

Bill for specific performance of contract for purchase of land. Defendants appeal. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Spaulding & Walbridge,* for complainants,

*James L. Clark* and *George P. Stone,* for defendants.

McGRATH, J. This is a bill filed to enforce the performance of the following instrument:

"RIVERTON, NEBRASKA, October 31, 1885.
"Due David S. French, attorney in fact for Hicks, Bennett & Co., eighteen thousand three hundred and sixty-six dollars ($18,366), being balance on consideration of one-half interest in personal property and lands this day sold Robert M. Steel, John Hicks, William S. Turck, and Townsend A. Ely; above sum to be paid by assignment of a certain mortgage on lands in Gratiot county, Michigan, to said David S. French, attorney, for $2,000, and balance of sixteen thousand three hundred and sixty-six dollars ($16,366) to be paid by promissory note due and payable on or before five years from date, with annual interest at 7 per cent. per annum, said note secured by mortgage on the undivided one-half interest in said ranch property as collateral security for payment of said sum of sixteen thousand three hundred and sixty-six dollars and interest, as aforesaid.

"$18,366.                           WM. S. TURCK.
                          "TOWNSEND A. ELY."

The parties are all residents of Michigan. In the fall of 1885 defendant Turck was in such poor health that it became necessary to give up the business in which he was then engaged. He was contemplating the purchase of a ranch or stock farm in company with his brother-in-law, the defendant Ely, believing that employment thereon would benefit his health. At this time he met David S. French, with whom he had been on most intimate terms for some 18 years, and their relations had been such that Turck relied implicitly on French. He made known his intention to French, who at once called his attention to a ranch in Nebraska, owned by complainants. French and defendants met by appointment a few days afterwards, when it is claimed that French gave a golden description of the ranch, representing that it was particularly valuable, and well adapted to stock-farming; that it was only necessary to feed stock about five months during the winter season; that there were 900 acres of bottom land, on which a sheep could be seen anywhere; that the property was owned by Hicks,

Bennett & Co., whom he represented, and that he also represented John Hicks and Robert M. Steel, who would buy a half interest if these defendants would; and, as he represented both parties,—that is, the vendors and a part of the vendees,—he would deal exactly just with them. He showed them a map on which the railroad was so located as not to injure that part of the ranch known as "Lots 2 and 3" at all. It was then arranged that the three should start on the following Monday for Nebraska, with the intention of looking at the property, and they went to Nebraska accordingly. The land consisted of several different parcels within a range of five or six miles.

It is claimed by defendants that French represented—

1. That the railroad right of way was on the north line of the parcel occupied by the ranch buildings, whereas it was in fact some distance south of the north line, running two miles through the premises, cutting off a large portion of land from the remainder, and rendering it practically of but little value.

2. That French pointed out to them a long side track adjacent to said railroad, with stock-pens conveniently arranged for shipping stock, and represented that the same, with the switch, belonged to complainants, whereas in truth and in fact the same belonged to the railroad company, and the railroad company afterwards removed the same.

3. That said French, in driving past one of said parcels of land with defendants, pointed to a stack containing about 75 tons of hay, and represented that said stack of hay had been cut that season from that parcel of land, which contained about 40 acres, whereas the said stack of hay represented two years' product of said parcel.

4. That in driving past other parcels of land said French simply skirted said parcels, and took defendants over and past the best and most productive portions of said land, and represented to defendants that the remaining portions, which defendants had not seen, were as good as those portions through and along which defendants had been driven, whereas in truth and in fact large

portions of the land which defendants had not seen were not as good as that which had been seen, and were inferior, and almost worthless, because of the broken character of their surface, their inferior soil, and numerous ravines or washouts, which they contained.

5. That there was a large number of cattle upon said ranch, whereas in truth and in fact there was a much less number.

6. That it was necessary to feed cattle in that locality but five months in the year, whereas in truth and in fact it was necessary to feed them, seven months in the year.

7. That the said ranch, and the climate of that locality, was well adapted for stock-raising purposes, whereas neither the ranch nor the climate was adapted to stock-raising, and the attempts of complainants in that direction had failed.

The defendants claimed also that they relied upon these representations made by said French, and that they knew nothing of their own knowledge concerning the matters in relation to which said misrepresentations had been made. Defendants further claimed that in the execution of the paper above set forth they were misled; that they did not read it or hear it read; that prior to its execution the following paper had been prepared and executed by said French, and had been read by them:

"RIVERTON, NEBRASKA, October 31, 1885.

"Know all men by these presents that I, David S. French, attorney in fact for Hicks, Bennett & Co., of Mt. Pleasant, Mich., in consideration of the sum of forty-five thousand dollars ($45,000), to me in hand paid by Robert M. Steel and John Hicks, of St. Johns, Clinton county, Michigan, and William S. Turck and Townsend A. Ely, of Alma, Gratiot county, Michigan, the receipt of which is hereby acknowledged, do hereby sell, assign, and transfer to the said Steel, Hicks, Turck, and Ely all the right, title, and interest of the said firm of Hicks, Bennett & Co., of Mt. Pleasant, Michigan, in and to the personal property of said firm of Hicks, Bennett & Co., now on the ranch in Franklin county, Nebraska, owned by said firm of Hicks, Bennett & Co., and also do hereby agree and bind the said firm of Hicks, Bennett &

Co. to make and deliver in fee-simple to the said Robert M. Steel, John Hicks, and William S. Turck, and Townsend A. Ely a clear title to the following described lands in Franklin county, Nebraska. [Then follows a description of certain lands.]

"Also I do hereby agree and bind myself, as attorney for said firm of Hicks, Bennett & Co., to assign and transfer to said Steel, Hicks, Turck, and Ely a certain contract for school lands made by the state of Nebraska to A. B. Upton, April 18, 1881, for the following described lands. [Then follows further description.] The said Steel, Hicks, Turck, and Ely hereby assuming to pay the balance of twenty-two hundred and sixty-eight dollars ($2,268) due upon the ·above state land contract, as being a part of the above consideration of forty-five thousand dollars ($45,000). The above transfer of real and personal property to Robert M. Steel, John Hicks, William S. Turck, and Townsend A. Ely is made to each in their individual right an undivided one-fourth interest in and to said personal property and real estate above enumerated.

"DAVID S. FRENCH,
"Attorney in fact for Hicks, Bennett & Co."

The defendants claim that it was not intended that they should be jointly liable for the amount named in the paper executed by them, but that each should have an undivided one-fourth of the property, and be liable for an undivided one-fourth of the consideration, and that such paper was handed to them for execution by French, who represented to them that it was in accordance with that understanding, and that, relying upon his representations, they executed it and returned it to him, and defendants did not again see said paper until long afterwards, when the deed of the premises was tendered to them. In the fall of 1886 complainants tendered to defendants a deed running to defendants Steel and Hicks, conveying to each an undivided one-fourth of the property in question, which deed defendants refused to accept for the reasons above given. Ely, representing all the parties, had gone upon the land soon after the contract

was entered into. Turck had gone south after the visit to the ranch, in the fall of 1885, and did not again see it until the fall of 1886, and complainants had been engaged during the interim in perfecting their title to the property in question.

From a careful examination of the record we are forced to the conclusion that Turck, by reason of his intimacy with French, relied largely upon the representations made by French to him, and that many of these representations relating to the productiveness and character of the land, the adaptability of the ranch and climate for stock-raising, the number of cattle upon the ranch, the location of the right of way of the railroad company, and the ownership of the spur and sheep-pens, were untrue, and misled defendants, and that the value of the ranch is much less than it would have been had it been as represented.

Equity will not decree performance of a contract into which a party has been led by misrepresentation. Parties asking the aid of a court of equity to enforce an agreement must exhibit a contract free from any charge or suspicion of unfairness or fraud.

The decree of the court below will be set aside, and a decree entered here dismissing complainants' bill, with costs of both courts to defendants.

The other Justices concurred.